Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Decision and Order of the Deputy Commissioner and enters the following Decision and Order:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The issue before the Industrial Commission is whether an agent or employee of the State of North Carolina negligently caused the damage suffered by plaintiff and if so, what amount if any is the plaintiff entitled to recover from defendant.
 *********
Based upon all of the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. During the early morning hours of May 15, 1992, Betty McGee, the estranged wife of plaintiff, Curtis Keith McGee, and plaintiff's mother were awakened by a team of officers from the Forsyth County Sheriff's Department wearing plain clothes and carrying guns. Although the testimony is not clear on the reason for the officers' presence, it appeared to be a "drug raid."
2. Betty McGee was awakened by an officer who held a gun pointed at her head. Plaintiff's mother and Ms. McGee were led to the living room and ordered to sit in chairs while officers searched the house.
3. Based upon the arrest and seizure report for Betty McGee, 578 units of an unnamed controlled substance was found during the search. These controlled substances were apparently Valium pills, based upon other evidence presented.
4. Betty McGee subsequently pled guilty to simple possession of a schedule IV controlled substance, a misdemeanor.
5. The plaintiff was never charged with a criminal offense in connection with the drugs found in the home occupied by his mother and estranged wife.
6. The plaintiff did not live with his mother at 5008 Days Brook Road, Winston Salem, N.C. Betty McGee was residing temporarily with her mother-in-law while trying to locate a place to live. The house she previously rented had been sold and she was forced to move.
7. On May 15, 1992 the plaintiff, who was a truck driver, was in Georgia.
8. The circumstances leading up to the search of plaintiff's mother's house are unclear from the record.
9. The evidence is conflicting on the question of why Richard A. Hughes, a controlled substance enforcement officer for the North Carolina Department of Revenue was present at plaintiff's mother's house during the early morning hours of May 15, 1992. He was not at the time working in his position of part-time auxiliary deputy sheriff for Forsyth County.
10. Richard A. Hughes testified that he was called by Sergeant Crater, a deputy sheriff, and requested to come to the home of plaintiff's mother. Based upon the greater weight of the evidence, Mr. Hughes was called because the officers had found a 1979 Kenworth tractor truck parked in plaintiff's mother's yard. The truck was registered at the Department of Motor Vehicles in the name of Clinton Ray Price. Mr. Hughes had previously initiated an Execution from the N.C. Department of Revenue against Clinton Ray Price. The Execution directed the sheriff of Forsyth County to satisfy the judgment from personal or real property of Clinton Ray Price.
11. Prior to levying on the 1979 Kenworth tractor truck on May 15, 1992, Mr. Hughes was advised by Betty McGee that the truck in question did not belong to Clinton Ray Price. Mr. Hughes was shown a notarized Bill of Sale and title dated February 18, 1992, indicating that Clinton Ray Price sold the truck to Curtis Keith McGee. The certificate of title was endorsed to Betty McGee. The truck was sold to plaintiff prior to the March 4, 1992 entry of judgment against Clinton Ray Price.
12. Plaintiff failed to register the title to the truck at the Department of Motor Vehicles after the purchase. However, the truck was inoperable on May 15, 1992.
13. After having notice that Clinton Ray Price no longer owned the truck in question, Mr. Hughes levied upon the truck based upon the prior Judgment and Execution. The Notice of Levy was signed on May 15, 1992 by Richard A. Hughes.
14. Defendant contends that the Notice of Levy was signed in Mr. Hughes' capacity as auxiliary deputy sheriff because only a sheriff or deputy sheriff can levy on an execution. Although this is a correct statement of the law, Mr. Hughes testified that he was acting for the N.C. Department of Revenue on May 15, 1992 when he was called to plaintiff's mother's home. Mr. Hughes' total involvement in this case was intended to be in his capacity as a revenue officer for the state. Based upon the Notice of Levy, R. A. Hughes took the truck into his possession and appointed Ingram's Garage as his agent, by leaving the truck with Ingram's Garage subject to the orders of R. A. Hughes only.
15. On May 28, 1992, Richard A. Hughes signed a Notice of Controlled Substance Tax Assessment against Betty McGee and the plaintiff based upon the 578 units of Valium found at the home of plaintiff's mother, which was also the temporary residence of Betty McGee.
16. It is not clear from the evidence why the Notice of Controlled Substance Tax Assessment was issued against the plaintiff, who was not at the residence at the time the drugs were found. He did not live at the residence, and had not been charged with any crime relating to the drugs.
17. At some subsequent time, more than two years after the seizure of plaintiff's truck, his truck was returned after plaintiff agreed to pay approximately $1,000.00 in storage costs. No weight is accorded to defendant's Exhibit #9 which purports to be the terms upon which the truck was released to plaintiff since this document is unsigned.
18. At some point while plaintiff's property was under the direct control of R. A. Hughes and his agent, Ingram's Garage, the engine block cracked due to lack of anti-freeze.
19. After the seizure of the truck and prior to the time the weather turned cold, plaintiff made repeated efforts to have anti-freeze installed in his truck. He called Mr. Hughes numerous times and his attorney called Mr. Hughes asking for permission to put anti-freeze in the truck. Plaintiff also called the sheriff's department in reference to getting anti-freeze in the truck, but was advised that the truck was under the control of Mr. Hughes.
20. Mr. Hughes told plaintiff and his attorney to have plaintiff purchase the anti-freeze, take it over to Ingram's Garage and that he would take care of getting the anti-freeze placed into the truck.
21. Plaintiff took the anti-freeze to Ingram's Garage as instructed, but was not allowed to put the anti-freeze in the truck himself. The anti-freeze was left at Ingram's Garage, but was never put into the truck. When the truck was returned to plaintiff, the engine block had cracked. Shortly before the seizure, plaintiff had placed a new engine in the truck, flushed the radiator, had the truck repainted, and was completing repairs to have the truck leased out for hauling.
22. The seizure of the truck was pursuant to a Judgment and Execution on Curtis Ray Price. There was never a judgment from which to issue an Execution and Levy against plaintiff or Betty McGee. There is no evidence of why the truck was being held after it became clear that Clinton Ray Price did not own it.
23. Mr. Hughes was called in to become involved in the seizure of the truck as a North Carolina Revenue Officer. All of his actions in reference to the seizure of the truck were in his capacity as a state revenue officer. There is no evidence that he was "on duty" as an auxiliary deputy sheriff when he was called to come to the house of plaintiff's mother. He intended to act in his capacity as a state revenue officer when he took possession of the truck and placed it under the control of Ingram's Garage as his agent. The Sheriff's Department of Forsyth County understood that R. A. Hughes was exercising his authority as a North Carolina revenue enforcement officer in seizing the truck. There were numerous deputy sheriffs who could have signed off on the Notice of Levy, at the time Mr. Hughes signed it, including Sergeant Crater. The effect of having the signature of R.A. Hughes on the Notice of Levy is that the North Carolina Department of Revenue issued an Execution and levied upon its own execution and, further, took exclusive possession of the property. The truck was held subject to the order of R.A. Hughes only.
24. Plaintiff's tractor truck was damaged while in the possession of R.A. Hughes and his appointed agent, Ingram's Garage. At the time plaintiff's truck was damaged, Richard A. Hughes was exercising control over the seized truck in the course and scope of his employment as an enforcement officer for the N.C. Department of Revenue.
25. Mr. Hughes had a duty to take reasonable measures to protect plaintiff's property from damage while in his possession. Mr. Hughes promised plaintiff that he would install anti-freeze in the truck if plaintiff purchased the anti-freeze and took it to Ingram's Garage. Mr. Hughes breached his duty to plaintiff by failing to install anti-freeze in the truck as promised.
26. Mr. Hughes' failure to install or have the anti-freeze installed in plaintiff's tractor truck was the proximate cause of the damage to plaintiff's truck from the freezing and cracking of the engine and, therefore, constituted actionable negligence. As a proximate result of the negligence of Mr. R.A. Hughes while acting in the course and scope of his employment, plaintiff sustained damages in the amount of $10,290.54 to his truck and $5,000.00 in the loss of net income while his truck was being repaired. The North Carolina Department of Revenue is liable to plaintiff for these damages.
27. Plaintiff did all he could do to try to keep his property from being damaged. Plaintiff was not contributorily negligent. Plaintiff's failure to register his truck with the Division of Motor Vehicles did not constitute contributory negligence.
28. Plaintiff's mother died at some point prior to the hearing before the deputy commissioner.
 *********
Based on the foregoing findings of fact and stipulations, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. R.A. Hughes was negligent in failing to take reasonable measures to protect the engine of plaintiff's truck's from freezing due to lack of anti-freeze after being placed on notice that the engine would lilely freeze due to lack of anti-freeze and after promising to have anti-freeze installed if plaintiff purchased and delivered it to Ingram's Garage, which plaintiff did.
2. There was no contributory negligence on the part of the plaintiff.
3. The negligence of R.A. Hughes was the proximate cause of the property damage sustained by plaintiff.
4. Plaintiff is entitled to damages for the negligence of defendant in the amount of $15,290.54.
 *********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Defendant shall pay to plaintiff $15,290.54 in damages.
2. Defendant shall pay the costs of this action.
 S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ LAURA K. MAVRETIC COMMISSIONER